## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARJORIE AHUMADA, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>        v.<br><br>GLOBAL WIDGET LLC, d/b/a HEMP BOMBS,<br><br>                   Defendant. | Case No. 1:19-cv-12005<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Marjorie Ahumada ("Plaintiff or "Ahumada"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, as and for this Class Action Complaint against Defendant Global Widget LLC, d/b/a Hemp Bombs ("Defendant" or "Hemp Bombs"), alleges the following based upon personal knowledge as to her own actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.      This is a class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Hemp Bombs Products, including CBD Gummies, CBD E-Liquid, CBD Oil, CBD Capsules, CBD Pain Freeze, CBD Lollipops, CBD Syrup, CBD Vape Products, Pet CBD Products, and CBD Shot (the "CBD Products")[1] for personal use and not for resale.

2.      Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the Commonwealth of Massachusetts.

---

[1] Each category of Defendant's Products contains several different flavors and dosages.

3.      The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

4.      With knowledge of growing consumer demand for CBD Products, Defendant has intentionally created a marketing scheme designed to target these consumers. Defendant makes numerous false and misleading claims on the front label of its CBD Products as well as on the retail website selling its CBD Products to illustrate and convey to consumers, the level of potency associated with benefits that consumers can expect to receive through their consumption.   Specifically, Defendant misrepresents that the CBD Products have specific amounts of CBD when, in fact, the Products do not contain the amount of CBD as advertised and are instead grossly under-dosed.

5.      Defendant's multiple and prominent systematic misrepresentations regarding the amount of CBD in the Products form a pattern of unlawful and unfair business practices that harms the public.

6.      Plaintiff and members of the putative class purchased the CBD Products for their ingredients, potency, and effects, and paid a premium for Defendant's CBD Products over comparable products that were not promoted with the misrepresentations at issue here.

7.      Accordingly, Plaintiff and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

8.      Plaintiff brings this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages she sustained as a result.  Given the massive quantities

---

[2] https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd.

of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## PARTIES

9.      Plaintiff Ahumada is a resident and citizen of North Andover, Massachusetts.  On June 17, 2019, Plaintiff purchased the Hemp Bombs Gummies Products from Haverhill Mart in Haverhill, Massachusetts.  Plaintiff purchased two of the Hemp Bombs Gummies Products at a cost of $7.99 per Product for a total cost of $16.98.  Prior to purchasing the Products, Plaintiff saw and read the front and back of the Products' packaging and relied on Defendant's representation and warranty that each Product contained 75mg of CBD per 5 count gummy package (15mg of CBD per gummy).  Plaintiff reasonably understood Defendant's labeling representation to mean that the Product contained 15mg of CBD per gummy.

10.      Plaintiff would not have bought Defendant's CBD Products or would have paid less for the Products had she known that the labeling she relied on was false, misleading, deceptive and unfair.

11.      Defendant Global Widget LLC, d/b/a Hemp Bombs is a limited liability company with its principle place of business in 8419 Sunstate St., Tampa, Florida 33634.  Defendant manufactures, produces, markets, and distributes various CBD Products throughout the United States, including Massachusetts.  Defendant knew that the labeling of CBD Products are false and misleading to a reasonable consumer, because they contain either no amount of the challenged ingredients, or amounts too low to have any pharmacological effect.

## JURISDICTION AND VENUE

12.      This Court has personal jurisdiction over Defendant.   Defendant purposefully avails itself of the Massachusetts consumer market and distributes CBD Products to hundreds of locations within this County and numerous retail locations throughout Massachusetts, where the CBD Products are purchased by hundreds or thousands of consumers.

13.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Several plaintiffs live in or made purchases of the CBD Products in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the products, occurred within this District and the Defendant conducts business in this District.

## COMMON FACTUAL ALLEGATIONS

15.     Defendant specializes in the manufacture, sale, and marketing of various CBD Products.  Defendant sells the Products in all 50 states via its website, other affiliate sites, and direct to consumer locations such as gas stations and convenience stores.

16.     The CBD market is growing rapidly, and consumer demand for CBD products is increasing at a level high.

17.     In fact, Scott Gottlieb, former commissioner of the Food and Drug Administration from May 2017 to April 2019, recently warned, "The CBD craze is getting out of hand."[3]

---

[3] https://www.washingtonpost.com/opinions/the-cbd-craze-is-getting-out-of-hand-the-fda-needs-to-act/2019/07/30/94c8024c-b211-11e9-8f6c-7828e68cb15f_story.html?noredirect=on

18.     CBD, short for cannabidiol, is a chemical compound from the cannabis plant. CBD is a naturally occurring substance that is used in products like oils and edibles to impart a feeling of relaxation and calm. Unlike its cousin tetrahydrocannabinol (THC), it is not psychoactive.  In other words, CBD does not give the user a "high."

19.     Consumers purchase CBD Products for their purported health benefits, like pain relief, anxiety and depression, without having to deal with the mind-altering effects of marijuana or certain pharmaceutical drugs.  CBD has also been used to treat back pain, osteoarthritis, and even cancer.

20.     However, it is difficult to determine the real benefits of CBD due to a lack of substantive research.

21.     According to former FDA commissioner Gottlieb, "[M]any of the [CBD] compound's expansive benefits are fanciful, and in fact, the sale of much of the product is illegal under current law."[4]

22.     Most CBD is extracted from the leaves, flowers and stalks of the cannabis plant via solvent or heat extraction methods.  The solvent extraction method uses solvents to separate the compounds from the plant.  On the high end, $CO_2$ (Carbon dioxide) is used as the solvent. On the low end, harsh chemicals (ethanol, butane, kerosene, etc) are used as the solvent.  In the heat extraction method, steam is used to extract the oil in a gentle and effective way.

23.     Due to the growing demand of CBD Products, companies in the market sell CBD in many forms to reach a wide audience.  The most common forms of CBD products include oils, tinctures, cosmetics, topical creams, gummies, chocolate, powder and off-the-shelf beverages.

24.     The Food and Drug Administration ("FDA") has not legalized CBD for sale as a supplement.  The agency has stated it wants more information on CBD and time to consider

---

[4] Id.

how it might regulate production, marketing, labeling, distribution and dosage recommendations.[5]

25.    The FDA acknowledges that "there are many unanswered questions about the science, safety, and quality of many of these [CBD] products."[6]

26.    Furthermore, "The FDA also tested the chemical content of cannabinoid compounds in some of the products, and many were found not to contain the levels of CBD they claimed to contain."[7]

27.    Because the FDA does not regulate CBD, it is possible to buy a product that is more or less potent than advertised, or even a product that contains small amounts of THC.

28.    Due to the lack of government regulations or oversight, many CBD manufacturers and distributors take advantage of the lack of regulatory oversight and misrepresent the contents of CBD Products.

29.    In fact, a 2017 study demonstrated that less than a third of 84 CBD products tested contained the amount of CBD advertised on their labels.[8]   Additionally, the FDA has reported that many CBD sellers advertise unsubstantiated health benefits, warning consumers to "beware purchasing and using such products."[9]

30.    Some local governments and regulatory bodies are restricting some CBD distribution.   For example, The New York City Department of Health has cracked down on

---

[5] https://www.fda.gov/news-events/fda-voices-perspectives-fda-leadership-and-experts/fda-committed-sound-science-based-policy-cbd

[6] Id.

[7] Id.

[8] https://jamanetwork.com/journals/jama/fullarticle/2661569

[9] https://www.fda.gov/news-events/public-health-focus/warning-letters-and-test-results-cannabidiol-related-products

restaurants, bars, coffee shops and other food service establishments from adding CBD to food or beverages.[10]

31.     Similarly, Massachusetts regulators have banned the sale of some hemp products, including foods infused with CBD and dietary supplements.[11]

32.     Most CBD Products are sold online, in local health-food stores, CBD-specific retailers, or convenience stores and gas stations.  Researchers and medical professionals advise consumers to look for products that show how much CBD is in each dose, not just the whole product.[12]

33.     Dosages of CBD are expressed in milligrams, or "mg", and vary depending on the form of the product.

34.     The amount of CBD a consumer should take depends on a range of factors, including: body weight; the condition being treating; individual body chemistry; and the concentration of CBD in each pill, capsule, drop, gummy, etc.

35.     Because there are so many variables that go into deciding how much CBD to take, it is recommended that consumers consult with a doctor about an appropriate dosage and any potential risks of taking the wrong amount of dosages.

36.     Many experts and medical professionals recommend CBD consumers start with a smaller dosage and gradually increase it, while documenting the affects at certain dosage levels.

37.     Therefore, it is clear that taking the right dosage of CBD is very important to consumers.

---

[10] https://www.amny.com/eat-and-drink/nyc-cbd-food-ban-1.33245187

[11] https://www.mass.gov/files/documents/2019/06/12/MDAR%20Policy%20Statement%20Sale%20of%20Hemp.pdf

[12] https://www.consumerreports.org/cbd/cbd-goes-mainstream/

38.     Stronger doses may be more suitable for certain CBD consumers.  These include people with severe pain or other debilitating symptoms, as well as those with a relatively high CBD tolerance.  And many consumers find that incrementally increasing the dosage is the best way to achieve the desired effects of CBD.

39.     As such, consumers pay a price premium for higher dosed CBD Products over lower-dosed products.

40.     At all relevant times, Defendant has advertised and labeled its CBD Products as containing a certain amount of CBD, which a reasonable consumer, including Plaintiff understands to mean that the Products actually contain that specific amount of CBD.  Such representations constitute an express warranty regarding the Products' contents.

41.     Contrary to Defendant's representations, however, independent laboratory testing, commissioned by Plaintiff's attorney, confirms that the CBD Products do not contain the amount of CBD as advertised.

***Defendant's Deceptive Advertising and Labeling***

42.     Defendant's website is replete with misrepresentations that the Products contain specific amounts of CBD:

> What makes our products different from the rest? We only use 99 percent pure CBD isolate, and we lab test our products to ensure they only contain CBD and no other cannabinoids like Tetrahydrocannabinol (THC). Hemp Bombs CBD products won't get you "high," and we follow industry best practices for CBD extraction, manufacturing and packaging. Learn more about our superior CBD products today.

https://hempbombs.com/cbd-products/

> Hemp Bombs manufactures some of the most potent and most concentrated CBD Oil you can find. Our CBD Oils are available in two delicious flavors - watermelon and peppermint - with an unflavored option more flavors in the works. Sometimes referred to as Hemp Oil and CBD Tincture, this product is called a "miracle compound" because of its potential advantages.  Our premium

Hemp Oil may help you lead a healthier and more active lifestyle by encouraging balance in the mind and body.

https://hempbombs.com/cbd-oils/

"Hemp Bombs 600mg CBD Oil represents one of our simplest products with the potential to soothe mild to moderate irritations and boost your overall wellness. Add to smoothies and recipes or take this oil alone to experience the therapeutic benefits."

https://hempbombs.com/product/600mg-cbd-oil/

*CBD Oil*

43.     Hemp Bombs manufactures, distributes and sells "Certified Pure CBD Oil," which it represents as "some of the most potent and most concentrated CBD Oil you can find," and a "'miracle compound' because of its potential advantages," and that its "premium Hemp Oil may help you lead a healthier and more active lifestyle by encouraging balance in the mind and body." *See* https://hempbombs.com/cbd-oils/ (last visited 8.29.19).

44.     According to Hemp Bombs, its CBD Oil comes in alleged potencies of 125 mg, 300mg and 600mg, and have alleged ingredients of "Broad Spectrum Hemp Extracts (CBD) MCT Oil, Grape Seed Oil, Hemp Oil, Natural & Artificial Flavoring."

45.     Hemp Bombs defines **Broad Spectrum CBD** as being "similar to Full Spectrum in the sense that both contain many beneficial compounds of Industrial Hemp aside from only CBD. The difference between these two forms is THC content. Broad Spectrum CBD does not contain any traces of THC." https://hempbombs.com/what-is-cbd/ (last visited 8.29.19).

46.     Defendant advertises prominently on the front and back of the Products' labeling the amount of CBD (in mgs) contained in the Products, that the Products were "certified pure," and/or that the Products were "high potency":






Figure 1: 600 mg of CBD per bottle, 10 mg of CBD per serving (also available in 125 mg per bottle and 300 mg per bottle).

***CBD Capsules***






Figure 2: Hemp Bombs High Potency CDB Capsules, Broad Spectrum CBD, 25 mg of CBD per capsule (1500mg of CBD per bottle).  "Hemp Bombs High Potency CBD Capsules offer those with stubborn or severe aches and discomforts a higher concentrated dose of this natural compound. This easily digestible capsule delivers long-lasting results and a daily wellness boost for your health. Take 1-2 capsules daily to start your day focused and relaxed."







Figure 3: Hemp Bombs Original CDB Capsules, Broad Spectrum CBD, 15 mg of CBD per capsule (900mg of CBD per bottle).  Hemp Bombs 60-Count Capsules offer CBD-related health benefits in an easy-to-digest capsule form. These capsules are designed to be conveniently stored for whenever you need them. Start your day off focused and energized with CBD Capsules and experience long-lasting relief from aches and discomfort.






Figure 4: Hemp Bombs CDB Capsules, Certified Pure CBD Blend, 15 mg of CBD per capsule (225mg of CBD per bottle).  Hemp Bombs Capsules offer CBD-related health benefits in and easy-to-digest capsule form. The capsules are designed to be conveniently stored for whenever you need them. CBD has helped many consumers with a wide number of issues already, having been connected with a multitude of therapeutic health benefits. Mainly, these benefits come from the way CBD interacts with your body's natural processes. Hemp Bombs sources its CBD from pure CBD Isolate, with zero THC. Then, quality control teams test our products to prepare them for the consumer.






Figure 5: 120ml E-Liquid, 120 ml bottle, 70/30 vg/pg split (also available in 75mg, 250mg, 300mg, 1000mg and 2000mg containers).  Hemp Bombs continues to be a trailblazer in the CBD industry with our premium CBD E-Liquid. Our **Vape Oil** is made with pure CBD isolate, and we offer multiple flavors and concentrations, so you can personalize your vape experience. We follow the best practices in Hemp sourcing and extraction to produce a superior quality CBD E-Liquid that is pure, potent and packed with therapeutic benefits. Hemp Bombs CBD E-Liquids are perfectly blended for maximum flavor, cloud production and enjoyment. You may order a la carte or select our Mix & Match E-Liquid packages to try multiple flavors at once. Our bundles give you the option to stock up on a variety of E-Liquids or double down on your favorites – all while saving money. Feel great and relax now with Hemp Bombs premium CBD Vape Oils.







Figure 6: Hempbombs Extra Strength CBD Syrup, Complete Relaxation Syrup, 1000mg of CBD per bottle (also available in 100mg and 300mg bottles). Hemp Bombs CBD Syrup features an ultra-concentrated dose of pure CBD so you can achieve maximum relaxation. While CBD is associated with many reported benefits, including anxiety relief and pain reduction, it is also known for its ability to promote deep, restful sleep. Our CBD Syrup features a premium blend of naturally calming ingredients to help you truly unwind and rest. Taken on its own or as a mixer, CBD Syrup is an optimal product for those who prefer to customize their dosing. Choose between concentrations of 100mg, 300mg and 1000mg and relax today.





Figure 7: Hemp Bombs High Potency CBD Gummies, Broad Specrrum CBD, 1500MG of CBD total, 25MG of CDB per gummy

Broad Spectrum Hemp Extract (CBD),
**Proprietary Blend**: L-Theanine, Scutellaria, Passiflora & Melatonin

**Other Ingredients:** Sugar, Corn Syrup, Gelatin, Citric Acid,
Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavors






Figure 8: Hemp Bombs Enhanced with Melatonin CBD Gummies, Broad Spectrum CBD, 15mg CBD per gummy (900mg CBD per bottle), 5mg Melatonin per gummy.

**Ingredients**: Broad Spectrum Hemp Extract (CBD), Melatonin
**Proprietary Blend**: L-Theanine, Scutellaria, Passiflora

**Other Ingredients**: Sugar, Corn Syrup, Gelatin, Citric Acid, Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavors






Figure 9: Hemp Bombs Certified Pure CBD Blend, 15mg CBD per gummy (900mg CBD per bottle).

**Ingredients:** Broad Spectrum Hemp Extract (CBD),
**Proprietary Blend**: L-Theanine, Scutellaria, Passiflora & Melatonin

**Other Ingredients**: Sugar, Corn Syrup, Gelatin, Citric Acid, Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavor



Figure 10: If you want to enjoy CBD and have a treat at the same time, you're in luck – Hemp Bombs CBD Jolly Bombs are designed with you in mind. Each delicious CBD lollipop packs a powerful amount of CBD and is completely vegan, so everyone can indulge in these tasty treats. You can enjoy them on-the-go on a busy day or while unwinding at home – your options are endless. Hemp Bombs CBD Jolly Bombs contain CBD isolate, which means there's no THC and the treat is federally legal in the U.S.

**Ingredients:** Certified Pure Cannabidiol (CBD), Soy Lecithin, Artificial Color, Sodium Lactate, Malic Acid, Corn Syrup, Sugar. Contains 2% or less of Natural & Artificial Flavor.

47.     Defendant knew that consumers would pay more for a product labeled "pure" and intended to deceive Plaintiff and putative class members by labeling the Products as such.

***Product Testing Confirms Defendant's Deception***

48.     Contrary to Defendant's uniform representation of the dosage of CBD on the Products' labels, plaintiff-commissioned laboratory testing shows that the Products are in fact grossly underdosed.

49.     The laboratory testing demonstrates that several of Defendant's Products contain significantly lower levels of CBD than advertised.[13]

***Defendant's Deceptive Statements are Illegal***

50.     Plaintiff and the Class members purchased and utilized the Products because they believed, based on the misleading CBD Products' labels, the information on Defendant's website and identical misleading information on Defendant's Products' labels, that the Products contained a certain amount of CBD, as advertised.

51.     Defendant's labeling and advertising of the Products misled Plaintiff and the Class Members.

52.     Defendant's misrepresentations regarding the amount of CBD in the Products misled Plaintiff and the Class members.

53.     The difference between the Products as promised and the Products as sold is significant and material.   Defendant's misrepresentations regarding the amount of CBD contained in the Products diminishes the economic value of the Products.   And the amount of CBD has real impacts on the benefits provided to consumers by the Products and the actual value of the Products.

---

[13] Preliminary and final reports show products containing only 2.6% to 35.8% of the claimed CBD content.

54.     Plaintiff and Class members would not have purchased the Products or would have paid less for the Products if they had known the Products contained a lesser amount of CBD than represented.

55.     Furthermore, Plaintiff and Class members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised CBD Products.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class:** All persons in the United States who purchased the Products.

57.     In the alternative, Plaintiff brings this action on behalf of the following state Class:

> **Massachusetts Class:** All persons in the Commonwealth of Massachusetts who purchased the Products.

58.     Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

59.     Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

60.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

61.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

62.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class(es) consists of thousands of consumers.

63.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

64.     Common questions of law and fact that affect Class members include, but are not limited to:

     a.     The extent to which the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive, false, or misleading;

     b.     The extent to which Defendant breached an express warranty to Plaintiff and Class members;

     c.     The extent to which Defendant breached a contract to Plaintiff and Class members;

     d.     The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

     e.     The extent to which Plaintiff and the Class should be awarded attorneys' fees and the costs of the suit.

65.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

66.     Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

67.     Plaintiff will fairly and adequately assert and protect the interests of the Class. Specifically, she has hired attorneys who are experienced in prosecuting class action claims and

will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

    a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

    b.    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

    c.    There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

    d.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

    e.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

    f.    The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CLAIMS FOR RELIEF

### COUNT I
### Breach Of Express Warranty
### (On Behalf Of The National Class, or Alternatively, The Massachusetts Class)

68.    Plaintiff incorporates paragraphs 1 through 67 as if fully set forth herein.

69.    Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Products. The terms of the contract included the promises and affirmations of fact made by Defendant on the Products'

packaging and the Products' labels which are identically representing on Defendant's website and other retailers' websites, and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

70.   Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

71.   Defendant breached express warranties about the Products and their qualities because Defendant's statements about the product were false and the product does not conform to Defendant's affirmations and promises as described above.

72.   Had they known the true nature of the Products, Plaintiff and each of the members of the Class would not have purchased the Products, or would not have paid as much for the Products.

73.   As a result of Defendant's breach of warranty, Plaintiff and each of the members of the Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT II**
**Breach of Contract/Common Law Warranty**
**(On behalf of the Massachusetts Subclass)**

74.   Plaintiff incorporates paragraphs 1 through 67 as if fully set forth herein.

75.   Plaintiff brings this cause of action on behalf of herself and the Massachusetts Subclass against Defendant.

76.   To the extent Defendant's commitment is deemed not to be a warranty under Massachusetts' Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

77.     Plaintiff and Massachusetts Subclass Members purchased the Products either directly from Defendant or through retailers.

78.     Defendant expressly warranted that the Products were fit for their intended purpose in that the Products contained the amount of CBD as advertised.

79.     Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Massachusetts Subclass Members and Defendant.

80.     Defendant breached the warranties and/or contract obligation by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain the amount of CBD they were represented to possess.  Because the Products do not contain the amount of CBD as advertised, the Products are unfit for their intended use and purpose.  The underdosing of CBD substantially and/or completely impairs the use and value of the Products.

81.     The underdosing of CBD at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiff and Massachusetts Subclass Members.  The underdosing of CBD and impaired use and value of the Products were not discoverable by Plaintiff and Massachusetts Subclass Members at the time of their purchase of the Products.

82.     As a direct and proximate cause of Defendant's breach of contract, Plaintiff and the Massachusetts Subclass Members were harmed because they would not have purchased the Products if they knew the truth about the Products.

<u>COUNT III</u>
**Magnuson-Moss – Breach of Express Warranty**
**15 U.S.C. § 2301 *et seq*.**
**(On Behalf of the National Class)**

83.     Plaintiff incorporates paragraphs 1 through 67 as though fully set forth herein.

84.     Plaintiff brings this claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

85.     Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3) who purchased the Products subject to Defendant's express warranty, and who is entitled by the terms of the warranty to enforce against the Defendant the obligations of same.

86.     The CBD Products described above are a "consumer product" as defined in 15 U.S.C. § 2301(1) because they are normally used for personal purposes and Plaintiff in fact purchased the Products wholly or primarily for personal use.

87.     Defendant is the manufacturer of the Products.

88.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

89.     The warranty described above is a "written warranty" as defined in 15 U.S.C. § 2301(6).

90.     Plaintiff and Class Members purchased the Products because of the manufacturer's warranty, as described above.

91.     Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief – (b) in an appropriate district court of the United States

92.     As described above, Defendant misrepresented the nature and characteristics of its Products by falsely stating that the Products contained a certain quantity of CBD, when in fact, the Products contained a significantly lower amount of CBD.

93.     Defendant breached its express warranty to consumers that its Products "contained 15mg of CBD" per gummy.

94.     Defendant's breach of the express warranty constitutes a violation of 15 U.S.C. § 2310(d).

95.     As a result, Plaintiff has never received the full use and value of the Products as warranted and suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.     Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.     Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

C.     Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

D.     Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

E.     For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

F.     For actual damages sustained and/or treble damages;

G.     For punitive or exemplary damages;

H.     For injunctive and declaratory relief;

24

I.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.    For such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 24, 2019                   Respectfully Submitted,

By:    */s/ Jason M. Leviton*
Jason M. Leviton
260 Franklin Street, Suite 1860
Boston, MA 02110
T: 617-398-5600
F: 617-507-6020
Jason@blockesq.com

Nick Suciu III*
Stephen Cohen*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
313-303-3472
nicksuciu@bmslawyers.com
stephencohen@bmslawyers.com

Jonathan Shub*
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Gregory F. Coleman*
Rachel Soffin*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com

*_Pro Hac Vice_ Application
Forthcoming

***Counsel For Plaintiff And The Class***