## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARJORIE AHUMADA, Individually and
on Behalf of All Others Similarly Situated,

                    Plaintiff,

          v.

GLOBAL WIDGET LLC, d/b/a HEMP
BOMBS,

                    Defendant.

Case No. 1:19-cv-12005-ADB

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Marjorie Ahumada ("Plaintiff or "Ahumada"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, files this First Amended Class Action Complaint against Defendant Global Widget LLC, d/b/a Hemp Bombs ("Defendant" or "Hemp Bombs"), and alleges the following based upon personal knowledge as to her own actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

      1.    This is a class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Hemp Bombs Products, including CBD Gummies, CBD E-Liquid, CBD Oil (for human consumption), CBD Capsules, CBD Lollipops, CBD Vape Products, CBD Ink Aftercare, and CBD Syrup (the "CBD Products" or "Products")[1] for personal use and not for resale.

      2.    Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the Commonwealth of Massachusetts.

      3.    The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

---

[1] Each category of Defendant's Products contains several different flavors and dosages.

[2] Iris Dorbian, CBD Market Could Pull In $16 Billion By 2020, Study Says, Forbes.com (March 12, 2019), https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd.

4.      With knowledge of growing consumer demand for CBD Products, Defendant has intentionally created a marketing scheme designed to target these consumers. Defendant makes numerous false and misleading claims on the front label of its CBD Products as well as on the retail website selling its CBD Products to illustrate and convey to consumers the level of potency associated with benefits that consumers can expect to receive through their consumption. Specifically, Defendant misrepresents that the CBD Products have specific amounts of CBD when, in fact, the Products do not contain the amount of CBD advertised and are instead grossly under-dosed.

5.      Defendant's multiple and prominent systematic misrepresentations regarding the amount of CBD in the Products form a pattern of unlawful and unfair business practices that harm the public.

6.      Plaintiff and members of the putative class purchased the CBD Products for their ingredients, potency, and effects, and paid a premium for Defendant's CBD Products.

7.      Accordingly, Plaintiff and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein.

8.      Plaintiff, on behalf of the class she seeks to represent, brings this lawsuit based on Defendant's unlawful and unconscionable consumer practices under the Massachusetts Consumer Protection Act, Chapter 93A *et seq*. (Count I), as well as Defendant's breach of express warranty (Count II), breach of contract/common law warranty (Count III), and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Count IV).  Accordingly, this lawsuit seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

9.      Plaintiff brings this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages she (and the putative class) sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## PARTIES

10.     Plaintiff Ahumada is a resident and citizen of North Andover, Massachusetts.  On June 17, 2019, Plaintiff purchased the Hemp Bombs Gummies Products from Haverhill Mart in Haverhill, Massachusetts.  Plaintiff purchased two of the Hemp Bombs Gummies Products at a cost of $7.99 per Product for a total cost of $16.98.  Prior to purchasing the Products, Plaintiff saw and read the front and back of the Products' packaging and relied on Defendant's representation and warranty that each Product contained 75mg of CBD per 5 count gummy package (15mg of CBD per gummy).  Plaintiff reasonably understood Defendant's labeling representation to mean that the Product contained 15mg of CBD per gummy.

11.     Plaintiff would not have bought Defendant's CBD Products or would have paid less for the Products had she known that the labeling she relied on was false, misleading, deceptive and unfair.

12.     Defendant Global Widget LLC, d/b/a Hemp Bombs is a limited liability company with its principle place of business at 8419 Sunstate St., Tampa, Florida 33634. Defendant formulates, manufactures, advertises, distributes, and sells various CBD Products throughout the United States, including Massachusetts.  Defendant knew that the labeling of its CBD Products are false and misleading to a reasonable consumer, because they contain either no amount of the challenged ingredients, or they contain amounts too low to have any pharmacological effect.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendant.  Defendant purposefully avails itself of the Massachusetts consumer market and distributes CBD Products to hundreds of locations within this District and numerous retail locations throughout Massachusetts, where the CBD Products are purchased by hundreds or thousands of consumers.

14.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class

is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well above $5,000,000.00 in the aggregate, exclusive of interest and costs.

15.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Plaintiff (and members of the putative class) lives in and made purchases of the CBD Products in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and Defendant conducts business in this District.

## COMMON FACTUAL ALLEGATIONS

16.     Defendant specializes in the manufacture, sale, and marketing of various CBD Products.  Defendant sells the Products in all 50 states via its website, other affiliate websites, and directly to consumers at gas stations and convenience stores.

17.     The CBD market is growing rapidly, and consumer demand for CBD products is increasing at a level high.

18.      In fact, Scott Gottlieb, former commissioner of the Food and Drug Administration from May 2017 to April 2019, recently warned, "The CBD craze is getting out of hand."[3]

19.     CBD, short for cannabidiol, is a chemical compound from the cannabis plant.  CBD is a naturally occurring substance that is used in products like oils and edibles to impart a feeling of relaxation and calm. Unlike its cousin tetrahydrocannabinol (THC), it is not psychoactive.  In other words, CBD does not give the user a "high."

20.     According to former FDA commissioner Gottlieb, "many of the [CBD] compound's expansive benefits are fanciful, and in fact, the sale of much of the product is illegal under current law."[4]

---

[3] Scott Gottlieb, The CBD craze is getting out of hand. The FDA needs to act., The Washington Post (July 30, 2019 at 5:33 p.m. EDT),  https://www.washingtonpost.com/opinions/the-cbd-craze-is-getting-out-of-hand-the-fda-needs-to-act/2019/07/30/94c8024c-b211-11e9-8f6c-7828e68cb15f_story.html?noredirect=on.

[4] Id.

21.     Generally, CBD is extracted from the leaves, flowers, and stalks of the cannabis plant via solvent or heat extraction methods.  The solvent extraction method uses solvents to separate the compounds from the plant.  On the high end, $CO_2$ (Carbon dioxide) is used as the solvent. On the low end, harsh chemicals (ethanol, butane, kerosene, etc.) are used as the solvent.  In the heat extraction method, steam is used to extract the oil in a gentle and effective way.

22.     Due to the growing demand of CBD Products, companies in the market sell CBD in many forms to reach a wide audience.  The most common forms of CBD products include oils, tinctures, cosmetics, topical creams, gummies, chocolate, powder and off-the-shelf beverages.

23.     The Food and Drug Administration ("FDA") has not legalized CBD for sale as a supplement.  The agency has stated that it wants more information on CBD and additional time to consider how it might regulate production, marketing, labeling, distribution, and dosage recommendations.[5]

24.     The FDA acknowledges that "there are many unanswered questions about the science, safety, and quality of many of these [CBD] products."[6]

25.     Furthermore, "[t]he FDA also tested the chemical content of cannabinoid compounds in some of the products, and many were found not to contain the levels of CBD they claimed to contain."[7]

26.     Because the FDA does not regulate CBD, it is possible to buy a product that is more or less potent than advertised, or even a product that contains small amounts of THC.

27.     Due to the lack of government regulations or oversight, many CBD manufacturers and distributors take advantage of the lack of regulatory oversight and misrepresent the contents of CBD Products.

---

[5] Amy Abernathy and Lowell Shiller, FDA is Committed to Sound, Science-based Policy on CBD, U.S. Food & Drug Administration (July 17, 2019), https://www.fda.gov/news-events/fda-voices-perspectives-fda-leadership-and-experts/fda-committed-sound-science-based-policy-cbd.

[6] *Id.*

[7] *Id.*

28.     In fact, a 2017 study demonstrated that less than a third of 84 CBD products tested contained the amount of CBD advertised on their labels.[8]  Additionally, the FDA has reported that many CBD sellers advertise unsubstantiated health benefits, warning consumers to "beware purchasing and using such products."[9]

29.     Some local governments and regulatory bodies are restricting some CBD distribution. For example, The New York City Department of Health has cracked down on restaurants, bars, coffee shops, and other food service establishments from adding CBD to food or beverages.[10]

30.     Similarly, Massachusetts regulators have banned the sale of some hemp products, including foods infused with CBD and dietary supplements.[11]

31.     Most CBD Products are sold online, in local health-food stores, CBD-specific retailers, or convenience stores and gas stations.  Researchers and medical professionals advise consumers to look for products that show how much CBD is in each dose, not just the whole product.[12]

32.     Dosages of CBD are expressed in milligrams, or "mg", and vary depending on the form of the product.

33.     The amount of CBD a consumer should take depends on a range of factors, including body weight, the condition being treated, individual body chemistry, and the concentration of CBD in each pill, capsule, drop, gummy, etc.

---

[8] Marcel O. Bonn-Miller, et al., Labeling Accuracy of Cannabidiol Extracts Sold Online, JAMA: The Journal of the American Medical Association, 2017;318(17):1708-1709, https://jamanetwork.com/journals/jama/fullarticle/2661569.

[9] U.S. Food & Drug Administration (October 22, 2019), Warning Letters and Test Results for Cannabidiol-Related Products, https://www.fda.gov/news-events/public-health-focus/warning-letters-and-test-results-cannabidiol-related-products.

[10] amNewYork, NYC ban on CBD-infused food and drinks is in force, https://www.amny.com/eat-and-drink/nyc-cbd-food-ban-1.33245187.

[11] Massachusetts Department of Agricultural Resources, Policy Statement Regarding the Sale of Hemp-Derived Products in the Commonwealth, https://www.mass.gov/files/documents/2019/06/12/MDAR%20Policy%20Statement%20Sale%20of%20Hemp.pdf.

[12] Lisa L. Gill, CBD Goes Mainstream, Consumer Reports (April 11, 2019), https://www.consumerreports.org/cbd/cbd-goes-mainstream/.

34.     Because there are so many variables that go into deciding how much CBD to take, it is recommended that consumers consult with a doctor about an appropriate dosage and any potential risks of taking the wrong dosage(s).

35.     Therefore, it is clear that taking the right dosage of CBD is very important to consumers.

36.     Stronger doses may be more suitable for certain CBD consumers.  These include people with severe pain or other debilitating symptoms, as well as those with a relatively high CBD tolerance.  And many consumers find that incrementally increasing the dosage is the best way to achieve the desired effects of CBD.

37.     As such, consumers pay a premium for higher dosed CBD Products over lower-dosed CBD Products.

38.     Consumers also pay a price premium for potent CBD Products over less-potent CBD Products.

39.     At all relevant times, Defendant has advertised and labeled its CBD Products as containing a certain amount of CBD, which a reasonable consumer, including Plaintiff, understands to mean that the Products actually contain that specific amount of CBD.  Such representations constitute an express warranty regarding the Products' contents.

40.     Contrary to Defendant's representations, however, independent laboratory testing commissioned by Plaintiff's attorney, confirms that the CBD Products do not contain the amount of CBD as advertised.

***Defendant's Deceptive Advertising and Labeling***

41.     Defendant's website is replete with misrepresentations that the Products contain specific amounts of CBD:

> What makes our products different from the rest? We only use CBD with less than 0.3 percent THC, and we lab test our products to ensure they are federally legal and of the highest quality. We are committed to current Good Manufacturing Practices (cGMPs) and set industry standards for CBD extraction, manufacturing and packaging. Experience the difference that Hemp Bombs CBD makes.[13]

---

[13] https://hempbombs.com/cbd-products/ (last viewed November 11, 2019).

Hemp Bombs manufactures some of the most potent and concentrated CBD Oil you can find. Our CBD Oils are available in six different concentrations and four delicious flavors – Acai Berry, Orange Creamsicle, Peppermint and Watermelon – with an unflavored option for versatility. Our premium Hemp Oil may help you lead a healthier and more active lifestyle by encouraging balance in the mind and body.[14]

## **The Products**

42.　　Hemp Bombs High Potency CBD Capsules:







---

[14] https://hempbombs.com/cbd-oils/ (last viewed October 29, 2019).

Figure 1: <u>Hemp Bombs High Potency CBD Capsules</u>, Broad Spectrum CBD, 25mg of CBD per capsule (1500mg of CBD per bottle).[15]

43.     On its website, Defendant represents the <u>Hemp Bombs High Potency CBD Capsules</u> as follows: "Hemp Bombs High Potency CBD Capsules offers a higher concentrated serving of this natural compound in every easily digestible capsule. Take 1-2 capsules daily to start your day focused and relaxed. Hemp Bombs High Potency CBD Capsules are a premium blend of Cannabidiol in an easily digestible capsule form. Our capsules provide you with a mix of high-quality ingredients and therapeutic benefits that may positively impact your health. Taken in the morning or at night, our CBD Capsules have the potential to enhance your overall well-being and boost your focus."[16]

44.     <u>Hemp Bombs Original CBD Capsules:</u>




---

[15] https://hempbombs.com/product/60-count-cbd-capsules-high-potency/ (last viewed October 29, 2019). Ingredients: Calcium (Citrate/Carbonate) 25mg, Magnesium (Oxide/Glycinate) 25mg, Broad Spectrum Hemp Extracts 25mg. Proprietary Blend: L-Theanine, B-phenyl-y-aminobutyric acid, Magnolia Bark, Scutellaria, Passiflora, Gelatin Capsule.

[16] Id.



Figure 2: <u>Hemp Bombs Original CBD Capsules</u>, Broad Spectrum CBD, 15mg of CBD per capsule (900mg of CBD per bottle).[17]

45.     On its website, Defendant represents the <u>Hemp Bombs Original CBD Capsules</u> as follows: "Hemp Bombs 60-Count Capsules offer CBD-related health benefits in an easy-to-digest capsule form. These capsules are designed to be conveniently stored for whenever you need them. Start your day off focused and energized with CBD Capsules. Hemp Bombs 60-count CBD Capsules are a premium blend of Cannabidiol in an easily digestible capsule form. Our capsules provide you with a mix of high-quality ingredients and therapeutic benefits that may positively impact your health. Taken in the morning or at night, our CBD Capsules have the potential to improve your focus and promote a more positive lifestyle."[18]

46.     On its website, Defendant represents <u>Hemp Bombs Certified Pure CBD Blend Capsules</u> as follows: "Hemp Bombs Capsules offer CBD-related health benefits in an easy-to-

---

[17]   https://hempbombs.com/product/hemp-bombs-60-count-cbd-capsules/   (last viewed October 29, 2019). Ingredients: Broad Spectrum Hemp Extracts 15mg Calcium (Citrate/Carbonate) 25mg, Magnesium (Oxide/Glycinate) 25mg. Proprietary Blend: L-Theanine, B-phenyl-y-aminobutyric acid, Magnolia Bark, Scutellaria, Passiflora, Gelatin Capsule.

[18] Id.

digest capsule form. The capsules are designed to be conveniently stored for whenever you need them. CBD has helped many consumers with a wide number of issues already, having been connected with a multitude of therapeutic health benefits. Mainly, these benefits come from the way CBD interacts with your body's natural processes. Hemp Bombs sources its CBD from pure European CBD Isolate, with zero THC. Then, quality control teams test our products to prepare them for the consumer."[19]

47.    Hemp Bombs Premium CBD E-Liquid:






---

[19] *Id.*

Figure 4: 120ml E-Liquid, 120 ml bottle, 70/30 vg/pg split (also available in 75mg, 250mg, 300mg, 1000mg and 2000mg containers). [20]

48.     On its website, Defendant represents Hemp Bombs Premium CBD E-Liquid as follows:  as follows: "Hemp Bombs continues to be a trailblazer in the CBD industry with our premium CB D E-Liquid. Our Vape Oil is made with broad spectrum CBD, and we offer multiple flavors and concentrations, so you can personalize your vape experience. We follow the best practices in Hemp sourcing and extraction to produce a superior E-Liquid that is premium, potent and packed with CBD's benefits. Hemp Bombs CBD E-Juices are perfectly blended for maximum flavor, cloud production and enjoyment. You may order a la carte or select our Mix & Match E-Liquid packages to try multiple flavors at once. Our bundles give you the option to stock up on a variety of E-Liquids or double down on your favorites – all while saving money. Feel great and relax now with Hemp Bombs premium CBD Vape Oils."[21]

49.     Hemp Bombs High Potency CBD Gummies:

---

[20] *See* https://hempbombs.com/cbd-e-liquid/ (last viewed October 29, 2019). Ingredients**:** Broad Spectrum Hemp Extracts, Vegetable Glycerine, Propylene Glycol.

[21] *Id*.






Figure 5: <u>Hemp Bombs High Potency CBD Gummies</u>, Broad Spectrum CBD,
1500 mg of CBD total, 25 mg of CBD per gummy.[22]

50.     On its website, Defendant represents <u>Hemp Bombs High Potency CBD</u>

<u>Gummies</u> as follows:"Hemp Bombs High Potency CBD Gummies are more potent than our

---

[22] https://hempbombs.com/product/60-count-cbd-gummies-high-potency/ (last viewed October 29, 2019).  Ingredients:
Broad Spectrum Hemp Extract (CBD), Proprietary Blend**:** L-Theanine, Scutellaria, Passiflora & Melatonin. Other
Ingredients: Sugar, Corn Syrup, Gelatin, Citric Acid, Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavors.

traditional CBD Gummies, each containing 25mg of premium CBD. Our High Potency CBD Gummies follow the same strict manufacturing and sourcing guidelines. Our products are tested both internally and by third parties for quality and consistency purposes."[23]

    51.   <u>Hemp Bombs Enhanced with Melatonin CBD Gummies</u>:







---

Figure 6: <u>Hemp Bombs Enhanced with Melatonin CBD Gummies</u>, Broad Spectrum CBD, 15mg of CBD per gummy (900mg of CBD per bottle), 5mg of Melatonin per gummy.[24]

52.     On its website, Defendant represents <u>Hemp Bombs Enhanced with Melatonin CBD Gummies</u> as follows: "Experience a good night's rest with our CBD Sleep Gummies. Formulated with 15mg of premium CBD and enhanced with the sleep aid melatonin, this product has the potential to promote deeper sleep and morning wakefulness."[25]

53.     <u>Hemp Bombs Original CBD Gummies</u>:

      

Figure 7: <u>Hemp Bombs Original CBD Gummies</u>, Broad Spectrum CBD, 15mg CBD per gummy (900mg CBD per bottle).[26]

---

[24]  https://hempbombs.com/product/60-count-cbd-sleep-gummies/ (last viewed October 29, 2019). Ingredients: Broad Spectrum Hemp Extract (CBD), Melatonin Proprietary Blend: L-Theanine, Scutellaria, Passiflora. Other Ingredients: Sugar, Corn Syrup, Gelatin, Citric Acid, Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavors.

[25] *Id.*

[26]  https://hempbombs.com/product/hemp-bombs-60-count-cbd-gummies/ (last viewed October 29, 2019). Ingredients: Broad Spectrum Hemp Extract (CBD), Proprietary Blend: L-Theanine, Scutellaria, Passiflora & Melatonin. Other Ingredients: Sugar, Corn Syrup, Gelatin, Citric Acid, Calcium Lactate, Silicon Dioxide, Natural & Artificial Flavors.

54.     On its website, Defendant represents <u>Hemp Bombs Original CBD Gummies</u> as follows: "Hemp Bombs CBD Gummies provide a 15mg serving of CBD per gummy to optimize your well-being and encourage relaxation. If you are on the move and looking for an effortless way to live a balanced and positive lifestyle, CBD Gummies may be the option for you."[27]

55.     <u>CBD Lollipops, Jolly Bombs</u>:



Figure 8: <u>CBD Lollipops, Jolly Bombs</u>, 40mg of CBD per lollopop.[28]

56.     On its website, Defendant represents <u>CBD Lollipops, Jolly Bombs</u> as follows: "If you want to enjoy CBD and have a treat at the same time, you're in luck – Hemp Bombs CBD Jolly Bombs are designed with you in mind.  Each delicious CBD lollipop packs 40mg of premium CBD and is completely vegan, so all adults can indulge in these tasty treats."[29]

---

[27] Id.

[28]   https://hempbombs.com/product/cbd-lollipops-jolly-bombs-2-pack/  (last viewed October 29, 2019). Ingredients: Broad Spectrum Hemp Extracts (CBD), Soy Lecithin, Artificial Color, Sodium Lactate, Malic Acid, Corn Syrup, Sugar. Contains 2% or less of Natural & Artificial Flavor.

[29] Id.

Defendant further represents: "You can enjoy them on-the-go on a busy day or while unwinding at home – your options are endless. Hemp Bombs CBD Jolly Bombs contain CBD isolate, which means there's no THC and the treat is federally legal in the U.S."[30]

57.   <u>CBD Syrup</u>:




Figure 9: <u>CBD Syrup</u>, Broad Spectrum CBD, 100mg of CBD per bottle.[31]

58.   On its website, Defendant represents <u>CBD Syrup</u> as follows: "Hemp Bombs' Complete Relaxation CBD Syrup is a powerful concentrate that packs CBD-derived wellness

---

[30] https://www.growthinhealth.org/product-page/cbd-lollipops-jolly-bombs (last viewed October 30, 2019).

[31] https://hempbombs.com/product/100mg-cbd-relaxation-syrup/ (last viewed October 30, 2019). Ingredients: Premium Broad Spectrum Extract (CBD), Water, High Fructose Corn Syrup, Natural and Artificial Fruit Punch Flavor, Vegetable Glycerin, Propylene Glycol, Citric Acid, Sodium Benzoate, Melatonin, FD&C Red No. 40, FD&C Blue No. 1.

benefits into manageable servings. This product is perfect as a mixer, infusing a CBD blend into any drink to generate a wellspring of complete relaxation."[32]

59.     Defendant uniformly marketed the Products in a consistent and uniform manner relating to ingredients, potency, and effect. 15mg CBD per gummy (900mg CBD per bottle).

60.     Defendant knew that consumers would pay more for Products advertised and labeled as the "most potent" and the "most concentrated CBD" Products, and intended to deceive Plaintiff and putative class members by advertising and labeling the Products as such.

61.     Defendant also knew that consumers would pay more for Products advertised as containing higher amounts of CBD, and intended to deceive Plaintiff and putative class members by falsely advertising and mislabeling the Products as containing specific amounts of CBD when the Products do not in fact contain those amounts.

62.     Moreover, Defendant knew that consumers would pay more for Products advertised and labeled as "premium," and intended to deceive Plaintiff and putative class members by advertising and labeling the Products as such.

***Product Testing Confirms Defendant's Deception***

63.     Contrary to Defendant's uniform representation of the dosage of CBD on the Products' labels, Plaintiff-commissioned laboratory testing shows that the Products are in fact grossly underdosed.

64.     The laboratory testing demonstrates that several of Defendant's Products contain significantly lower levels of CBD than advertised.[33]

65.     Furthermore, because testing confirms that the Products are grossly underdosed, Defendant's representations that the Products are "premium" and the "most potent" and the "most concentrated CBD" Products are false and misleading.

---

[32] *Id.*

[33] Preliminary and final reports show Products containing only 2.6% to 37.6% of the claimed CBD content.

*Defendant's Deceptive Statements are Illegal*

66.     Plaintiff and the Class members purchased and utilized the Products because they believed, based on the misleading CBD Products' labels and the information on Defendant's website, that the Products contained a certain amount of CBD, as advertised.

67.     Defendant's labeling and advertising of the Products deceived and misled Plaintiff and the Class members.

68.     Defendant's misrepresentations regarding the amount of CBD in the Products deceived and misled Plaintiff and the Class members.

69.     The difference between the Products as promised and the Products as sold is significant and material. Defendant's misrepresentations regarding the amount of CBD contained in the Products diminishes the economic value of the Products.  And the amount of CBD has real impacts on the benefits provided to consumers and on the actual value of the Products.

70.     Plaintiff and Class members would not have purchased the Products or would have paid less for the Products if they had known the Products contained a lesser amount of CBD than represented.

71.     Furthermore, Plaintiff and Class members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised CBD Products.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class:**  All persons in the United States who purchased the CBD Products within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment (the "National Class").

73.     In the alternative, Plaintiff brings this action on behalf of the following state Class:

> **Massachusetts Class:** All persons in the Commonwealth of Massachusetts who purchased the CBD Products within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment (the "Massachusetts Class").

74.     Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant; (2) Defendant's legal

representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

75.     Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

76.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

77.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

78.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class(es) consists of thousands of consumers.

79.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

80.     Common questions of law and fact that affect Class members include, but are not limited to:

  a.     The extent to which the marketing, advertising, packaging, labeling, and other promotional materials for the CBD Products are unfair, deceptive, false, or misleading;

  b.     Whether Defendant breached an express warranty to Plaintiff and Class members;

  c.     Whether Defendant breached a contract to Plaintiff and Class members;

  d.     The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

  e.     The extent to which Plaintiff and the Class should be awarded attorneys' fees and the costs of the suit.

81.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.

Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

82.   Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

83.   Plaintiff will fairly and adequately assert and protect the interests of the Class. Specifically, she has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

   a.   The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

   b.   The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

   c.   There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

   d.   Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

   e.   Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

   f.   The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of Massachusetts Consumer Protection Act**
**(Mass. Gen. Laws Ch. 93A)**
**(On Behalf of Plaintiff and the Massachusetts Class)**

84.     Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

85.     Plaintiff brings this Count on behalf of herself and the Class.

86.     Plaintiff asserts a claim under the Massachusetts Consumer Protection Act ("Chapter 93A"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ch. 93A, § 2(a).

87.     Defendant is engaged in "trade" and "commerce" as it offers CBD Products for sale to consumers.  By misrepresenting that its Products contain a certain amount of CBD, when in fact, the Products do not contain the amount of CBD as advertised, Defendant committed unfair methods of competition and unfair and deceptive acts and practices in the conduct of a trade or commerce.

88.     Under Massachusetts law, it is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading.  940 C.M.R. § 6.04(1).

89.     By misrepresenting the amount of CBD contained in its Products, Defendant made material representations of fact that it knew, or should have known, were false and misleading and that had the tendency and capacity to be misleading.

90.     Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the amounts of CBD in the Products, as described above, constitute affirmative misrepresentations in connection with the marketing, advertising, promotion, and sale of the Products in violation of the Chapter 93A.

91.     Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase the Products from Defendant.

92.     By repeatedly referencing the amount of CBD in the Products on the front and back labels of the Products, as well as on Defendant's website (https://hempbombs.com), Defendant willfully misrepresented to reasonable consumers that its Products contain certain amounts of CBD, when in fact, the Products contain much lower amounts of CBD than advertised.   These representations are false and misleading.

93.     Furthermore, Defendant knowingly made misrepresentations of material fact by representing that the Products are "premium" and "some of the most potent and most concentrated CBD" Products on the market.  Grossly underdosed CBD Products are anything but "premium" or "potent."

94.     Defendant also failed to inform customers that its Products contained under-dosed amounts of CBD.  That information would have been material to any consumer deciding whether to purchase CBD Products from Defendant.

95.     Defendant knew at the time it released the Products into the marketplace, that the CBD Products contained significantly lower amounts of CBD than advertised.  Indeed, Defendant's own Product testing would confirm such.

96.     Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

97.     Defendant's intentional concealments were designed to deceive consumers into believing Defendant's Products contained specific amounts of CBD and that the Products were "premium" and "the most potent" CBD Products in the market.  Defendant benefits from reliance and deprives consumers of informed purchasing decisions.

98.     Defendant's conduct as alleged above constitutes a deceptive act or practice. Defendant's misrepresentations and omissions as set forth above were and are likely to mislead consumers, and Defendant knew and intended that consumers would rely upon those misrepresentations and omissions.  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Defendant's Products contained the specific amounts of CBD as advertised (when in fact they do not).  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Defendant's Products were premium and potent Products in the market (when in fact they were not).  Defendant's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of the Products from Defendant.

99.     Defendant's affirmative conduct and omissions constitute unlawful practices beyond a mere breach of warranty.  Rather, Defendant's practices are unconscionable and outside the norm of reasonable business practices.  No reasonable consumer would purchase Defendant's Products if they knew that the Products were grossly underdosed.  Yet, by deceiving consumers, Defendant has managed to convince them to purchase its Products.  This is plainly an unconscionable result.

100.     Defendant's conduct as alleged above constitutes unfair practices because Defendant does not accurately disclose or label the Products with the amount of CBD actually contained in the Products.

101.     Defendant's acts and practices with regard to its mislabeled Products as alleged above are immoral, unethical, oppressive, and unscrupulous.

102.     Defendant's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for the Products but for Defendant's immoral, unethical, oppressive and unscrupulous practices.  Consumers have thus overpaid for Defendant's Products and such injury

is not outweighed by any countervailing benefits to consumers or competition.   No benefit to consumers or competition results from Defendant's conduct, nor could consumers reasonably have avoided the injury.

103.   Defendant's conduct as alleged above also constitutes a deceptive act or practice. Defendant's representations as set forth above were and are likely to mislead consumers, and Defendant knew and intended that consumers would rely upon those representations.  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Defendant's Products contained specific amounts of CBD (when in fact they do not).  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Defendant's Products were premium and potent (when in fact they were grossly underdosed and not premium or potent).  Defendant's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of Products from Defendant.

104.   As a result of Defendant's actions, Plaintiff and Class members suffered injuries because they purchased Defendant's Products that they otherwise would not have bought or paid more than they would have paid but for Defendant's actions.

105.   The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss and substantial injury when they paid a premium for Defendant's Products.

106.    Chapter 93A § 9 permits any consumer injured by a violation of the MCPA to bring a civil action, including a class action, for damages and injunctive relief.  Massachusetts has a strong interest in applying MCPA to the conduct at issue here.  Plaintiff resides in Massachusetts, and Defendant formulates, manufactures, advertises, markets, distributes and sells the Products in Massachusetts.

107.    Plaintiff and the members of the Class are entitled to the greater of their actual damages or the statutory amount of $25.

108.    As a result of Defendant's unlawful business practices, Plaintiff and the members of the Class are entitled, pursuant to Chapter 93A *et seq*., to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains.

109.    Defendant's violation of Chapter 93A *et seq*. was knowing and willful.  Defendant's failure to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated Chapter 93A.  Therefore, Plaintiff and the members of the Class are entitled to recover not less than twice and not more than three times their actual damages and any applicable statutory penalties.  Plaintiff and the members of the Class are also entitled to attorneys' fees.

110.    Plaintiff made a written demand for relief in satisfaction of Chapter 93A, § 9(3) on September 24, 2019, and Defendant has failed to provide an adequate response.

111.    Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Massachusetts Class)**

112.    Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

113.    Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Products. The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' packaging and the Products' labels which are similarly represented on Defendant's website and other retailers' websites, and through marketing and advertising, as described above. This labeling, marketing and

advertising constitutes express warranties and became part of the basis of bargain, and part of the standardized contract between Plaintiff and the members of the Class and Defendant.

114.    Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

115.    Defendant breached express warranties about the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises as described above.

116.    Had they known the true nature of the Products, Plaintiff and the Class would not have purchased the Products, or paid as much as they did for the Products.

117.    As a result of Defendant's breach of warranty, Plaintiff and each of the members of the Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT III**
**Breach of Contract/Common Law Warranty**
**(On Behalf of Plaintiff and the Massachusetts Class)**

118.    Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

119.    Plaintiff brings this cause of action on behalf of herself and the Massachusetts Subclass against Defendant.

120.    To the extent Defendant's commitment is deemed not to be a warranty under Massachusetts' Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

121.    Plaintiff and Massachusetts Subclass Members purchased the Products either directly from Defendant or through retailers.

122.    Defendant expressly warranted that the Products were fit for their intended purpose in that the Products contained the amount of CBD as advertised.

123.    Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Massachusetts Subclass Members and Defendant.

124.    Defendant breached the warranties and/or contract obligation by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain the amount of CBD they were represented to possess.  Because the Products do not contain the amount of CBD as advertised, the Products are unfit for their intended use and purpose.  The underdosing of CBD substantially and/or completely impairs the use and value of the Products.

125.    The underdosing of CBD at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiff and Massachusetts Subclass Members.  The underdosing of CBD and impaired use and value of the Products were not discoverable by Plaintiff and Massachusetts Subclass Members at the time of their purchase of the Products.

126.    As a direct and proximate cause of Defendant's breach of contract, Plaintiff and the Massachusetts Subclass Members were harmed because they would not have purchased the Products if they knew the truth about the Products.

**COUNT IV**
**Magnuson-Moss – Breach of Express Warranty**
**15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and the National Class)**

127.    Plaintiff incorporates paragraphs 1 through 83 as though fully set forth herein.

128.    Plaintiff brings this claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

129.    Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3) who purchased the Products subject to Defendant's express warranty, and who is entitled by the terms of the warranty to enforce against the Defendant the obligations of same.

130.     The CBD Products described above are a "consumer product" as defined in 15 U.S.C. § 2301(1) because they are normally used for personal purposes and Plaintiff in fact purchased the Products wholly or primarily for personal use.

131.     Defendant is the manufacturer of the Products.

132.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

133.     The warranty described above is a "written warranty" as defined in 15 U.S.C. § 2301(6).

134.     Plaintiff and Class members purchased the Products because of the manufacturer's warranty, as described above.

135.     Section 2310 (d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief – (b) in an appropriate district court of the United States

136.     As described above, Defendant misrepresented the nature and characteristics of its Products by falsely stating that the Products contained a certain quantity of CBD, when in fact, the Products contained a significantly lower amount of CBD.

137.     Defendant breached its express warranty to consumers that its Products "contained 15 mg of CBD" per gummy.

138.     Defendant's breach of the express warranty constitutes a violation of 15 U.S.C. § 2310 (d).

139.     As a result, Plaintiff has never received the full use and value of the Products as warranted and suffered damages.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.	Enter an order certifying the proposed Class (and Subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.	Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

C.	Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

D.	Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

E.	For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

F.	For actual damages sustained and/or treble damages;

G.	For punitive or exemplary damages;

H.	For injunctive and declaratory relief;

I.	For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.	For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: November 15, 2019	Respectfully Submitted,

	**BLOCK & LEVITON LLP**

	*/s/ Jason M. Leviton*
	Jason M. Leviton (BBO# 678331)
	260 Franklin Street, Suite 1860
	Boston, MA 02110
	T:  617-398-5600
	F:  617-5076020
	Jason@blockesq.com

Nick Suciu III*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
313-303-3472
nicksuciu@bmslawyers.com

Jonathan Shub*
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Gregory F. Coleman*
Rachel Soffin*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com

*Pro Hac Vice* Application Forthcoming

***Counsel For Plaintiff And The Class***